UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| KOURTNEY PEARSON[1] | * |
| Plaintiff, | * |
| v. | * |
| KASHYAP P. PATEL,<br>in his official capacity as Director,<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530 | *    Civil Action No: 26-_____<br><br>**JURY TRIAL DEMANDED** |
| and | * |
| FEDERAL BUREAU OF<br>INVESTIGATION<br>935 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530 | * |
| and | * |
| UNITED STATES OF AMERICA<br>Washington, D.C. 20500 | * |
| Defendants. | * |

**COMPLAINT**

Plaintiff Kourtney Pearson ("Ms. Pearson") faithfully dedicated nearly two decades of her life as an employee of the United States Government, all of which she served the Defendant Federal Bureau of Investigation ("FBI"). Yet, on February 2, 2026, she was suddenly, arbitrarily and unlawfully fired. At the time of her termination, Ms. Pearson was a Management and Program Analyst within the Security Division where, among other tasks, she faithfully

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), the Plaintiff's residential address is being filed under seal with the Court in a separate Notice of Filing.

and strategically helped reorganize human resource functions and improved operational efficiency for a division of over 500 personnel.

Notwithstanding decades of statutory and regulatory provisions that both Congress and the Executive Branch painstakingly crafted and implemented governing how and when members of the civil service can be terminated, and the limitations that apply to such proceedings, Defendant FBI Director Kashyap P. Patel ("Director Patel") personally summarily removed Ms. Pearson from federal service through issuance of a one-page memorandum that solely relied upon "Article II of the United States Constitution and the laws of the United States []." ("Termination Memo"). In so doing, the Defendants expressly and deliberately failed to afford Ms. Pearson the required due process prior to her termination.

This action is being brought against Defendants Director Patel, in his official capacity, the FBI, and the United States of America (herein referred to collectively as the "Defendants" or "Government") for the purposes of seeking relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, and the First and Fifth Amendments to the Constitution of the United States.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b), (e) and 5 U.S.C. § 703.

3. Sovereign immunity for non-monetary relief is waived under 5 U.S.C. § 702, which entitles Ms. Pearson to relief because Defendants acted unconstitutionally and beyond statutory authority.

## PARTIES

4. Plaintiff Ms. Pearson would have achieved twenty years of federal employment with Defendant FBI in August 2028. Over the course of her federal career, Ms. Pearson received the Attorney General Award, an FBI Exceptional Performance Award and over twenty Incentive Awards for Performance.

5. Defendant Director Patel is sued in his official capacity as the FBI's Director. He personally signed the Termination Memo that removed Ms. Pearson from federal service.

6. Defendant FBI, which is headquartered in Washington, D.C., is an agency of the United States as defined by 5 U.S.C. § 701 and is subject to the jurisdiction of this Court. Defendant FBI's officials or employees terminated Ms. Pearson.

7. Defendant United States of America is responsible for the state action being challenged by Ms. Pearson and which was by exercised by the other Defendants, especially when reliance is upon the apparent authority of the President under Article II of the U.S. Constitution.

## FACTS

*Ms. Pearson's Summary Termination*

8. Ms. Pearson was placed on administrative leave by executive management in the Human Resources Division ("HRD") on March 16, 2025, without prior notice, justification, or being provided any performance-based rationale. Upon asking for the justification, Ms. Pearson was told by then HRD Assistant Director Miriam Coakley via e-mail that it was due to "mission need" and that she would receive no further explanation. Her immediate supervisors informed her that they were not involved in the decision.

9. Ms. Pearson languished on administrative leave from March 16, 2025, to March 27, 2025, and was never once provided any substantive information concerning why she was placed in this status.

10. Ms. Pearson reported to the Security Division ("SecD") starting March 31, 2025.

11. On December 3, 2025, Ms. Pearson made a protected whistleblower disclosure challenging her treatment via e-mail to Associate Deputy Director Chad Yarbrough, a senior FBI official responsible for administrative personnel actions. Also noticed on the e-mail were HRD Assistant Director Christie Curtis and SecD Assistant Director Robert Turner, their respective deputies, and Mark D. Michalek, the Operational Director for the Human Resources Branch. Receipt of the protected disclosure was acknowledged.

12. On December 4, 2025, and only after she had made a protected whistleblower disclosure, Ms. Pearson was informed that her "former" division would provide a billet to enable her formal reassignment. Additionally, that same day, she was informed by her Section Chief Christina Fahim that "I won," and FBI executive management was being directed to have her reassignment to be completed "immediately." But that never happened.

13. By e-mail dated January 13, 2026, an attorney assigned to OPR informed Ms. Pearson's legal counsel that in its present form the e-mail dated December 3, 2025, "does not allege sufficient facts to provide OPR with jurisdiction to investigate the matter."

14. On January 30, 2026, Ms. Pearson, through her legal counsel, provided supplemental information to OPR with respect to her protected whistleblower disclosure.

15. On Monday, February 2, 2026, Ms. Pearson was provided with a memorandum dated Friday, January 30, 2026, signed by Defendant Director Patel summarily terminating her employment. The memo reads, in relevant parts, as follows:

> This document provides official notice that you are being summarily dismissed from your position at the Federal Bureau of Investigation, and removed from the federal service, under my authority as the FBI Director, effective immediately.

4

> You have demonstrated unprofessional conduct, and pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Federal Bureau of Investigation is hereby terminated.

16. Ms. Pearson asked Acting Assistant Director Joshua Stone, who provided her with this memo, for an explanation concerning her termination and was simply told there was no further information available. Upon information and belief, the identical generic language relied upon by Defendant Director Patel was used to summarily terminate other FBI employees, including on that very same day.

17. At no time was Ms. Pearson provided notice nor made aware of any conduct that may have served as a basis for her termination.

18. As a U.S. Government employee and a member of the civil service, Ms. Pearson was entitled to procedural and substantive due process before removal from federal service. The Defendants' summary removal of her without such process was unlawful.

***Limitations on the FBI Director's Ability to Summarily Remove FBI Employees***

19. Defendant Director Patel does not have absolute authority, much less under Article II of the Constitution, to simply remove FBI employees without due process. Specifically, there are crucial guardrails that protect employees from such arbitrary or unlawful termination.

20. The Defendants may only terminate Ms. Pearson if doing so does not violate statutorily defined prohibited personnel practices, and only after established due process procedures are followed.

21. The limitations on Defendant Director Patel's removal authority include, but are not limited to, the Prohibited Personnel Practices, as administered and interpreted by the Office of Personnel Management ("OPM"). *See* 5 U.S.C. § 2302(b).

22. OPM is explicitly charged with administering the federal civil service, which encompasses all federal employment. *Id*. at § 1103(a)(5). Additionally, OPM is responsible for promoting and enforcing nine Merit Systems Principles, which apply across the federal service and dictate that personnel actions (including removals) must be based on merit and fitness, and must not be arbitrary, capricious, or discriminatory. *Id*. at § 2301. These principles require that "[e]mployees should be protected against arbitrary action, personal favoritism, or coercion for partisan political purposes." *Id*. at § 2301(b)(8)(A).

23. OPM also administers and interprets the Prohibited Personnel Practices as outlined in § 2302(b). These statutory prohibitions prevent agencies from taking, or failing to take, personnel actions against members of the civil service for certain reasons. For example, agencies cannot discriminate against a person for conduct that does not adversely affect performance, their political affiliation, or their refusal to engage in any coerced political activity. *See e.g.*, § 2302(b)(1)(prohibiting discrimination based on protected characteristics, including political affiliation); § 2302(b)(3)(prohibiting action taken against any employee as reprisal for refusal to engage in any coerced political activity); and § 2302(b)(10)(prohibiting discrimination based on conduct not adversely affecting performance).

24. Congress enacted the Civil Service Reform Act ("CSRA") in 1978, to create a uniform scheme for administrative and judicial review of covered federal employee personnel actions to ensure a non-political career civil service for the good of the American public. That scheme sets forth the protections and remedies available to such employees as well as the procedural process they must follow. *Id*. at § 4301(b)(1). But the CSRA expressly excludes FBI employees from most of its provisions, including the right to appeal removals or other adverse actions to the

Merit Systems Protection Board, except where the employee is a preference-eligible veteran. 5 U.S.C. § 7511(b)(8). Ms. Pearson does not meet that exception.

25. Instead, the FBI has adopted its own internal procedures that parallel the protections offered by the CSRA. These protections for personnel are memorialized in multiple written documents and implemented through well-established internal practices and procedures.

26. For example, the FBI issued an "Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process (Jan. 1, 2017)."[2]

   a. The document explains that the "FBI's disciplinary process serves to ensure adherence to the Bureau's rigorous standards of conduct" and "provide[s] general categories of misconduct for which employees may be disciplined."

   b. The document reflects that investigations regarding employee misconduct are handled by the FBI's Inspection Division (INSD); adjudications by the Office of Professional Responsibility (OPR); and appeals by the Human Resources Branch (HRB).

   c. The document also includes a table of FBI Offense Codes with corresponding penalty ranges.

27. An OPR Policy Guide, dated September 8, 2021, outlines the FBI's policy for OPR matters.

   a. The Policy Guide provides that OPR's role is to implement the "Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process" document described above and to apply "FBI standards equally regardless of. . . protected status."

   b. The document provides that OPR conducts "prompt, thorough, and fair adjudication of employee misconduct cases."

   c. The document explains that the DOJ's Office of the Inspector General (DOJ-OIG) and the FBI's INSD "review all allegations of employee misconduct to determine whether an investigation is warranted… If an investigation is warranted, an administrative inquiry will be opened and [FBI's INSD or DOJ-OIG] will investigate the matter."

---

[2] *https://vault.fbi.gov/offense-codes-and-penalty-guidelines-governing-fbis-internal-disciplinary-process/offense-codes-and-penalty-guidelines-governing-fbis-internal-disciplinary-process-final*.

    d.  The document explains that "[u]pon conclusion of the investigative phase, the matter will be referred to OPR for adjudication." At the same time, INSD must "request[] the submission of a Douglas Factors assessment", which must in turn be provided to OPR by the employee's supervisor "within two weeks." The Douglas Factors are twelve "factors articulated by the Merit Systems Protection Board in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981)" to be considered before imposing any penalty, including the "employee's past work record" and "[m]itigating circumstances surrounding the offense."

    e.  The document provides that OPR will review the entirety of the file "to determine, by a preponderance of the evidence, whether the employee violated an FBI Offense Code." If so, "OPR will determine the appropriate penalty" by reference to the penalty ranges in the "Offense Codes and Penalty Guidelines Governing FBI's Internal Disciplinary Process" document described above. In addition, "OPR will prepare a report of investigation that addresses the allegations, relevant facts, and applicable legal standards."

    f.  The document provides for "summary dismissal" of employees only in cases where "(a) the safety of the public; (b) the safety of fellow employees; (c) national security interests; or (d) other compelling or exigent circumstances are at stake." Only the FBI Director, Deputy Director, or Assistant Director for OPR may exercise the authority, which "is an extraordinary remedy to be exercised only in compelling or exigent circumstances."

28. An Internal Affairs Policy Guide, dated July 11, 2024, outlines the FBI's policy for Inspection Division matters and provides for "fair, timely, and thorough" investigations and reviews of "allegations of misconduct or criminality against FBI employees."

29. In 2021, DOJ-OIG published a report on the FBI's misconduct investigations process and noted that summary dismissal is reserved for "extraordinary cases" that "require a strong and swift response" such as "cases that involved child pornography" and "the case of an employee who stole drug evidence for personal use."

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT**
**(PROCEDURAL DUE PROCESS, PROPERTY INTEREST)**
**(<u>Against All Defendants</u>)**

30. Ms. Pearson repeats and realleges the allegations contained in paragraphs 8 through 29 above, inclusive.

31. Ms. Pearson has a protected property interest in her continued employment with the FBI and the United States Government.

32. Defendants' actions to terminate Ms. Pearson without proper due process unlawfully deprived Ms. Pearson of that property interest.

33. Ms. Pearson has suffered adverse and harmful effects from the deprivation of her property interests in her employment, including, but not limited to, loss of income and lost or jeopardized present and future financial opportunities.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**(*ULTRA VIRES* IN VIOLATION OF STATUTORY AUTHORITY)**
**(Against Defendants Director Patel and the FBI)**

34. Ms. Pearson repeats and realleges the allegations contained in paragraphs 8 through 29 above, inclusive.

35. Defendants Director Patel and the FBI had no lawful authority to terminate Ms. Pearson from federal service without adhering to the statutory protections to which she was entitled. Her termination was therefore *ultra vires* and without legal force or effect.

36. Ms. Pearson has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities. As such, she is entitled to reinstatement, an award of back pay and any other available damages.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**- 5 U.S.C. §§ 706(1) and 706(2)**
**(Against Defendants Director Patel and the FBI)**

37. Ms. Pearson repeats and realleges the allegations contained in paragraphs 8 through 29 above, inclusive.

38. Defendants Director Patel and the FBI, in authorizing and signing the issuance of the Termination Memo, implemented a final agency decision "not in accordance with the law," "contrary to a constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

39. Ms. Pearson has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## FOURTH CAUSE OF ACTION
## DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 and 2202
## (Against All Defendants)

40. Ms. Pearson repeats and realleges the allegations contained in paragraphs 8 through 29 above, inclusive.

41. Ms. Pearson is entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Ms. Pearson and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Defendants do not have authority to remove Ms. Pearson without affording her all the rights and protections set forth by applicable statutes and regulations.

42. Ms. Pearson has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## FIFTH CAUSE OF ACTION
## WRIT OF MANDAMUS
## (Against All Defendants)

43. Ms. Pearson repeats and realleges the allegations contained in paragraphs 8 through 29 above, inclusive.

44. In the alternative, Ms. Pearson is entitled to a writ of mandamus commanding the Defendants to return her to a position of employment and not remove her from federal service

without first following lawful procedures. Defendants have a legal duty not to terminate Ms. Pearson without affording her the protections prescribed by law and, absent this Court granting relief, there is no other adequate means of redress.

45. The provisions of 28 U.S.C. § 1361 create jurisdiction in cases seeking a writ of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies. To the extent relief is unavailable under either the APA, common law equity, or any other law to enjoin unlawful government action, mandamus lies here.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Kourtney Pearson requests that the Court award her the following relief:

(1) An order that the Defendants immediately reinstate Ms. Pearson and enjoin them from taking any further adverse personnel action against her without providing appropriate procedural and substantive due process as required by law and the Fifth Amendment;

(2) A declaration that the Defendants' actions violated Ms. Pearson's Fifth Amendment due process and statutory rights and order appropriate relief;

(3) A declaration that Defendants Director Patel and the FBI violated the Administrative Procedure Act;

(4) An award of back and front pay and other monetary and administrative relief as appropriate;

(5) Award of the costs of this action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

(6) grant such other relief as the Court may deem just and proper.

Date:   February 17, 2026

                          Respectfully submitted,

                          /s/ *Mark S. Zaid*

                        _____

                        Mark S. Zaid, Esq.
                        D.C. Bar #440532
                        Bradley P. Moss, Esq.
                        D.C. Bar #975905
                        Kevin T. Carroll, Esq.
                        D.C. Bar #1021479
                        Geoffrey Deweese, Esq.
                        (*Pro Hac Vice* pending)
                        Mark S. Zaid, P.C.
                        1250 Connecticut Avenue, N.W.
                        Suite 700
                        Washington, D.C. 20036
                        (202) 498-0011
                        Mark@MarkZaid.com
                        Brad@MarkZaid.com
                        Geoffrey@MarkZaid.com

                        Attorneys for the Plaintiff