UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KOURTNEY PEARSON,

Plaintiff,

v.

KASHYAP P. PATEL,
in his official capacity as Director, Federal Bureau of Investigation, et al.,

Defendants.

Civil Action No. 26-0509 (RJL)

**DEFENDANTS' MOTION TO DISMISS**

Defendants, by and through the undersigned counsel, respectfully move to dismiss Plaintiff Kourtney Pearson's First Amended Complaint, ECF No. 10, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The grounds for dismissal are set forth in the accompanying memorandum. A proposed order is also enclosed.

Dated: July 1, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ William Thanhauser*

WILLIAM THANHAUSER, D.C. Bar #1737034
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7706

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KOURTNEY PEARSON,<br><br>Plaintiff,<br><br>v.<br><br>KASHYAP P. PATEL,<br>in his official capacity as Director, Federal Bureau of Investigation, et al.,<br><br>Defendants. | Civil Action No. 26-0509 (RJL) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Contents ..... i

Table of Authorities ..... ii

Background ..... 1

Legal Standards ..... 2

Argument ..... 4

I. Plaintiff's Claims Are Barred by the CSRA ..... 4

II. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted. ..... 8

A. Plaintiff's *Ultra Vires* Claim (Count I) Should Be Dismissed Because Her Termination Was a Proper Exercise of Article II Authority ..... 8

B. Plaintiff Alleges Insufficient Facts to Support a First Amendment Retaliation Claim (Count III) ..... 10

C. Plaintiff Lacks a Protected Property Interest to Support a Procedural Due Process Claim (Count V) ..... 13

D. Plaintiff's Derivative Claims (Counts VI and VII) Should Be Dismissed 18

Conclusion ..... 21

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011) .......... 12
*Am. Butterfly Ass'n v. Wolf*,
977 F.3d 1244 (D.C. Cir. 2020) .......... 3
*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) .......... 8
*Aref v. Holder*,
774 F. Supp. 2d 147 (D.D.C. 2011) .......... 3
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1, 3
*Auleta v. Dep't of Justice*,
80 F. Supp. 3d 198 (D.D.C. 2015) .......... 2
*Barnhart v. Devine*,
771 F.2d 1515 (D.C. Cir. 1985) .......... 6
*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) .......... 8
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3
*Bloch v. Powell*,
348 F.3d 1060 (D.C. Cir. 2003) .......... 10
*Bush v. Lucas*,
462 U.S. 367 (1983) .......... 4
*Carducci v. Regan*,
714 F.2d 171 (D.C. Cir. 1983) .......... 4
*Davis v. Billington*,
51 F. Supp. 3d 97 (D.D.C. 2014) .......... 7
*deLeon v. Wilkie*,
Civ. A. No. 19-1250 (JEB), 2020 WL 210089 (D.D.C. Jan. 14, 2020) .......... 6
*Doe v. Gates*,
981 F.2d 1316 (D.C. Cir. 1993) .......... 9
*Elgin v. Dept. of Treasury*,
567 U.S. 1 (2012) .......... 4-8
*Fed. Law Enforcement Officers Ass'n v. Ahuja*,
62 F.4th 551 (D.C. Cir. 2023) .......... 4, 6
*Filebark v. U.S. Dep't of Transp.*,
555 F.3d 1009 (D.C. Cir. 2009) .......... 4
*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005) .......... 4, 5, 6, 13
*Graham v. Ashcroft*,
358 F.3d 931 (D.C. Cir. 2004) .......... 4, 6
*Grosdidier v. Chairman, Broad. Bd. of Governors*,
560 F.3d 495 (D.C. Cir. 2009) .......... 4, 5

*Gustave-Schmidt v. Chao*,
226 F. Supp. 2d 191 (D.D.C. 2002) ....................4
*Ho v. Garland*,
106 F.4th 47 (D.C. Cir. 2024) ....................3
*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) ....................13
*Jewell v. Jagadesan*,
Civ. A. No. 25-1322 (DLF), 2026 WL 686105 (D.D.C. Mar. 11, 2026) ....................7
*Kobelia v. FBI*, Civ. A.,
No. 24-2542 (SLS), 2025 WL 1444509 (D.D.C. May 20, 2025) ....................5
*Ky. Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) ....................9, 11, 12
*Lacson v. Dep't of Homeland Sec.*,
726 F.3d 170 (D.C. Cir. 2013) ....................4
*Lamb v. Holder*,
82 F. Supp. 3d 416 (D.D.C. 2015) ....................5, 7, 14
*Langeman v. Garland*,
88 F.4th 289 (D.C. Cir. 2023) ....................8, 10, 11, 14
*Langeman v. Garland*, Civ. A.,
No. 21-2888 (RJL), 2022 WL 5240112 n.6 (D.D.C. Aug. 23, 2022) ....................14
*Leedom v. Kyne*,
358 U.S. 184 (1958) ....................14
*Mahoney v. Donovan*,
721 F.3d 633 (D.C. Cir. 2013) ....................4
*Mapes v. Reed*,
487 F. Supp. 3d 20 (D.D.C. 2020) ....................6
*Marshall v. Honeywell Tech. Solutions, Inc.*,
675 F. Supp. 2d 22 (D.D.C. 2009) ....................2
*McCardle*,
74 U.S. 506 (1868) ....................2
*Papasan v. Allain*,
478 U.S. 265 (1986) ....................3
*Printz v. United States*,
521 U.S. 898 (1997) .................... 9-10
*Runnels v. FBI*,
Civ. A. No. 25-1202 (BAH), 2025 WL 3089526 (D.D.C. Nov. 5, 2025) ....................5
*Shulter v. United States*,
531 F.3d 930 (D.C. Cir. 2008) ....................2
*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) ....................13
*Steadman v. Governor, United States Soldiers' & Airmen's Home*,
918 F.2d 963 (D.C. Cir. 1990) ....................6
*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ....................2
*Strzok v. Garland*, Civ. A.,
No. 19-2367 (ABJ), 2025 WL 4662300 (D.D.C. Sept. 23, 2025) ....................9, 10

*Sykes v. Dudas*,
573 F. Supp. 2d 191 (D.D.C. 2008) ....................3
*Tarpeh-Doe v. United States*,
904 F.2d 719 (D.C. Cir. 1990) ....................8, 9, 11
*Trump v. Slaughter*,
No. 25-332, 2026 WL 18556122 (U.S. June 29, 2026) ....................9
*U.S. v. Fausto*,
484 U.S. 439 (1988) ....................4, 5, 7
*Washington Legal Clinic for the Homeless v. Barry*,
107 F.3d 32 (D.C. Cir. 1997) ....................8, 10
*Westinghouse Elec. Co. v. Korea Elec. Power Corp.*,
Civ. A. No. 22-3228 (APM), 2023 WL 7007613 (D.D.C. Sept. 18, 2023) ....................13

**Statutes**

28 U.S.C. § 1361 ....................13
5 U.S.C. § 706(2)(A) ....................14
5 U.S.C. § 7511(b)(8) ....................4

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ....................1, 2, 3
Federal Rule of Civil Procedure 12(b)(6) ....................1, 3

Defendants, by and through the undersigned counsel, respectfully file this memorandum of points and authorities in support of their motion to dismiss Plaintiff Kourtney Pearson's First Amended Complaint, ECF No. 10, under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim, respectively.

## BACKGROUND

Defendants assume the following factual allegations, taken from Plaintiff's amended complaint, to be true solely for the purpose of evaluating her amended pleadings' sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was hired by the Federal Bureau of Investigation ("FBI" or the "Bureau") in August 2008. Am. Compl. ¶ 4. In March 2025, Plaintiff was placed on administrative leave due to mission need, and then temporarily reassigned from the Bureau's Human Resources Division, to its Security Division. *Id.* ¶ 10. Several months later, effective January 30, 2026, Plaintiff was summarily terminated from her position at the FBI. *Id.* ¶ 15. Plaintiff received notice of her summary termination through a memorandum, signed by FBI Director Kashyap Patel, which explained that Plaintiff had "demonstrated unprofessional conduct" warranting her removal. *Id.* The memo further set out that Plaintiff's removal was pursuant to Article II of the Constitution and federal law, and effectuated under Patel's authority as FBI Director. *Id.* Upon inquiry to the FBI employee who provided her with the memorandum, Plaintiff was not provided any further information. *Id.* ¶ 16.[1] Plaintiff states that, on information and belief, she was viewed by certain

---

[1] Separately, Plaintiff alleges that, on December 3, 2025, she made a protected disclosure, challenging her pre-termination treatment, by email to FBI officials; that on January 13, 2026, FBI's Office of Professional Responsibility ("OPR") informed Plaintiff, through her legal counsel, that her December 3, 2025 email did not allege sufficient facts to provide OPR with jurisdiction to investigate; and that Plaintiff subsequently provided additional information to OPR on January 30, 2026. Am. Compl. ¶¶ 11, 13, 14. Plaintiff, however, does not appear to base any of her claims on these allegations. *See id.* ¶¶ 30-59 (making no claims alleging retaliation on the basis of alleged protected disclosure).

Bureau decision-makers as being associated with "a former senior FBI official who had retired following the 2025 presidential inauguration" and that her "perceived affiliation and association" with this official contributed to her termination. *Id.* ¶ 17.

On February 17, 2026, Plaintiff initiated the instant action against the FBI, Patel, and the United States of America. After Defendants moved to dismiss Plaintiff's initial complaint, *see* ECF No. 7, on May 20, 2026, Plaintiff filed an amended complaint. *See* ECF No. 10. Therein, Plaintiff alleges that her removal was *ultra vires*, as Patel and FBI lacked summary-termination authority under Article II of the Constitution (Count I), *see* Am. Compl. ¶¶ 30-33; in violation of the Administrative Procedure Act ("APA"), as it was made "without adhering to the statutory and internal protections to which she was entitled" (Counts II & V), *see id.* ¶¶ 34-36 & 50-53; in violation of the First Amendment, as it was in retaliation for her association with the aforementioned "former senior FBI official," (Count III), *see id.* ¶¶ 37-44; and in violation of the Fifth Amendment, as it deprived her of a protected property interest—her continued employment with the FBI and federal government—without adequate due process (Count IV), *see id.* ¶¶ 45-49. Plaintiff also asserts entitlement to declaratory judgment (Count VI), *see id.* ¶¶ 54-56, and a writ of mandamus (Count VII). *See id.* ¶¶ 57-59. For relief, Plaintiff seeks, among other things, an order that Defendants immediately reinstate Plaintiff, a declaration that Defendants have violated her First Amendment and Fifth Amendment rights and the APA, and awards of back pay, front pay, and attorney fees. *See id.* Request for Relief.

## LEGAL STANDARDS

Rule 12(b)(1) provides that a federal court must dismiss a case when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Generally, '[b]efore a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims.'" *Auleta v. Dep't of Justice*, 80 F. Supp. 3d 198, 201 (D.D.C. 2015) (quoting *Marshall v. Honeywell Tech. Solutions, Inc.*, 675

F. Supp. 2d 22, 24 (D.D.C. 2009)). It is the plaintiff's burden to demonstrate subject matter jurisdiction. *Shulter v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff cannot meet his burden, the court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 74 U.S. 506 (1868)). In considering a motion to dismiss for lack of subject matter jurisdiction, a court "'accept[s] the . . . complaint's well-pleaded factual allegations as true'" and "draws all reasonable inferences" in the plaintiff's favor. *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020); holding as such for facial challenges). However, "[b]ecause subject matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion[.]" *Aref v. Holder*, 774 F. Supp. 2d 147, 159 (D.D.C. 2011).

Rule 12(b)(6) governs dismissal of a case for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Sykes v. Dudas*, 573 F. Supp. 2d 191, 198 (D.D.C. 2008). However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* at 198-99. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Likewise, the court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Accordingly, plaintiffs must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 668 (quoting *Twombly*, 550 U.S. at 557). Therefore, the focus is on the language in the complaint and whether the complaint sets forth sufficient factual allegations to plausibly support plaintiff's claims for relief. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (internal citations omitted).

**ARGUMENT**

**I. <u>Plaintiff's Claims Are Barred by the CSRA.</u>**

The Civil Service Reform Act ("CSRA") sets out a comprehensive remedial scheme for reviewing adverse personnel actions against federal employees. That scheme precludes judicial review to the extent not afforded by the statute—the CSRA acts as the exclusive remedy for federal employment and personnel complaints, except those expressly exempted by statute (such as statutes addressing claims of discrimination that are not applicable here). *See, e.g.*, *Elgin v. Dept. of Treasury*, 567 U.S. 1, 10-13 (2012); *U.S. v. Fausto*, 484 U.S. 439, 444 (1988); *Bush v. Lucas*, 462 U.S. 367, 388-90 (1983); *Fed. Law Enforcement Officers Ass'n v. Ahuja*, 62 F.4th 551, 555 (D.C. Cir. 2023); *Mahoney v. Donovan*, 721 F.3d 633, 634-35 (D.C. Cir. 2013); *Lacson v. Dep't of Homeland Sec.*, 726 F.3d 170, 174-76 (D.C. Cir. 2013); *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009); *Fornaro v. James*, 416 F.3d 63, 66-67 (D.C. Cir. 2005); *Graham v.*

*Ashcroft*, 358 F.3d 931, 933-35 (D.C. Cir. 2004); *Carducci v. Regan*, 714 F.2d 171, 172 (D.C. Cir. 1983).

Not all federal employees are covered under the CSRA. As relevant here, under 5 U.S.C. § 7511(b)(8), non-preference-eligible FBI employees, like Plaintiff, Am. Compl. ¶ 24, are expressly excluded from the CSRA's coverage for challenging removals. *See, e.g.*, *Lamb v. Holder*, 82 F. Supp. 3d 416, 422 (D.D.C. 2015) (citing 5 U.S.C. § 7511(b)(8) and finding it "exclude[es] employees of the FBI from [the CSRA's] subchapter concerning removal"); *Kobelia v. FBI*, Civ. A. No. 24-2542 (SLS), 2025 WL 1444509, at *15 (D.D.C. May 20, 2025) ("[N]ot all employees are covered under [CSRA] Subchapter II. . . . FBI employees are generally excluded . . . ."); *see also Runnels v. FBI*, Civ. A. No. 25-1202 (BAH), 2025 WL 3089526, at *4 (D.D.C. Nov. 5, 2025) (collecting cases).

Nonetheless, the fact that the CSRA does not afford FBI employees like Plaintiff any affirmative relief does not diminish the preclusive effect of the statute on any claims that such non-covered employees might assert. *See Fausto*, 484 U.S. at 447-448. In *Fausto*, the Supreme Court:

> considered whether a so-called "nonpreference excepted service employe[e]" could challenge his suspension in the United States Claims Court, even though the CSRA did not then afford him a right to review in the [Merit Systems Protection Board] or the Federal Circuit. Citing "[t]he comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75," the Court concluded that "the absence of provision for these employees to obtain judicial review" was a "considered congressional judgment." The Court thus found it "fairly discernible" that Congress intended to preclude all judicial review of Fausto's statutory claims.

*Elgin*, 567 U.S. at 10-11 (citations omitted). *Fausto* holds that "the CSRA's 'elaborate' framework . . . demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review." *Elgin*, 567 U.S. at 11 (emphasis in original). Indeed, as to both employees covered by the CSRA and those, like Plaintiff, not covered by it, "extrastatutory

review" is not available "outside of the CSRA statutory scheme." *See id.* at 10-13; *see also Grossdidier*, 560 F.3d at 497 ("[T]he CSRA is the exclusive avenue for suit" for federal employees, "even if the plaintiff cannot prevail in a claim under the CSRA."); *Fornaro*, 416 F.3d at 67 ("[W]hat you get under the CSRA is what you get.").

Accordingly, Plaintiff is foreclosed by the CSRA from pursuing her claims. Importantly, the CSRA's preclusive effect applies to not just her APA claims (i.e., Counts II and V), *see, e.g.*, *Graham*, 358 F.3d at 935 (holding that "the CSRA provides no relief and precludes other avenues of relief" in dismissing the plaintiff FBI employee's APA claims), declaratory judgment claim (i.e., Count VI), *see, e.g.*, *Fed. Law Enforcement Officers Ass'n*, 62 F.4th at 561 ("As relief, [plaintiff] seeks a declaratory judgment . . . . [T]hat challenge . . . falls squarely within the scope of the CSRA's exclusive remedial regime."), and mandamus claim (i.e., Count VII), *see, e.g.*, *Fornaro*, 416 F.3d at 69-70 (holding "mandamus precluded by adequate remedy under the CSRA" (citing *Barnhart v. Devine*, 771 F.2d 1515, 1524, 1527 (D.C. Cir. 1985)), but also her constitutional claims (i.e., Counts I, III, and IV). *Fausto* did not involve constitutional claims. However, as the Supreme Court explained in *Elgin*, CSRA "exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action." 567 U.S. at 15. Thus, any attempt to distinguish *Fausto* on the basis that it did not involve constitutional claims cannot be reconciled with *Elgin*. *See, e.g.*, *Mapes v. Reed*, 487 F. Supp. 3d 20, 26 (D.D.C. 2020) ("[The D.C.] Circuit has made clear time and again that the CSRA provides 'the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the [Act]'" and that "[t]he answer is no different for a constitutional claim." (citing *Elgin*, 567 U.S. at 21)); *see also Steadman v. Governor, United States Soldiers' & Airmen's Home,* 918 F.2d 963, 967 (D.C. Cir. 1990) ("federal employees may not circumvent [the CSRA] structure even if their claim is

based as well on the Constitution"); *cf. deLeon v. Wilkie*, Civ. A. No. 19-1250 (JEB), 2020 WL 210089, at *4 (D.D.C. Jan. 14, 2020) ("Plaintiff, moreover, cannot escape [the CSRA] exhaustion requirement by characterizing his disputes as constitutional.").

Defendants recognize that various courts in this District have held that the CSRA does not preclude non-covered employees from bringing their constitutional claims. *See, e.g.*, *Jewell v. Jagadesan*, Civ. A. No. 25-1322 (DLF), 2026 WL 686105, at *3 (D.D.C. Mar. 11, 2026); *Lamb v. Holder*, 82 F. Supp. 3d 416, 422-24 (D.D.C. 2015). But Defendants respectfully submit that this holding cannot be reconciled with *Elgin* and *Fausto*. For example, in *Lamb*, the court determined that a "heightened" showing of Congressional intent to preclude constitutional claims was required before it could conclude that the CSRA foreclosed such claims by a non-covered employee. 82 F. Supp. 3d at 423. In so holding, the court concluded that the lesser "fairly discernible" standard from *Elgin* applied only when the plaintiff was covered by the procedural protections provided by the CSRA, and that a heightened standard applied when an employee was exempted from those protections. That analysis, cannot be reconciled with *Elgin* and *Fausto*. *Fausto* applied the same "fairly discernible" standard to hold that the presumption favoring judicial review was overcome based on the comprehensive structure of the CSRA. *Fausto*, 484 U.S. at 452. Although *Lamb* distinguished *Fausto* as not involving a constitutional claim, *Lamb*, 82 F. Supp. 3d at 423, *Elgin* relied on *Fausto* in holding that Congress had expressed a "fairly discernible" intention to foreclose judicial review over the claims in *Elgin* (which were of a constitutional nature), *Elgin*, 567 U.S. at 10-11, and also emphasized that exclusivity does not turn on the nature of an employee's claim. *Id.* at 15. Thus, the distinction in *Lamb* based on the constitutional nature of the claim is inconsistent with *Elgin* and *Fausto*. For similar reasons, the analysis by other courts

in this District that reached a similar result, *see, e.g.*, *Jewell*, 2026 WL 686105, at *3-4, cannot be reconciled with *Elgin* and *Fausto*.

Because the CSRA does not afford Plaintiff judicial review by which to challenge an adverse personnel decision, this Court lacks jurisdiction over all of Plaintiff's claims.

## II. <u>Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.</u>

Even were the Court to find that it has jurisdiction over Plaintiff's claims, Plaintiff's non-APA claims should be dismissed for the alternative reason that they fail to state a claim for which relief can be granted. Plaintiff's *ultra vires* claim (Count I) should be dismissed because Plaintiff's removal was a lawful exercise of the FBI Director's Article II authority. Plaintiff's First Amendment retaliation claim (Count III) should be dismissed because Plaintiff alleges insufficient facts to support such claim. Plaintiff's Fifth Amendment claim (Count IV) should be dismissed because Plaintiff does not have a protected property interest in her continued employment. Plaintiff's Declaratory Judgment Act claim (Count VI) warrants dismissal because the Act provides no separate cause of action and her substantive claims, as discussed above, fail. Finally, Plaintiff's mandamus claim (Count VI) should be dismissed because Plaintiff cannot show that she is entitled to mandatory, non-discretionary relief.

### A. Plaintiff's *Ultra Vires* Claim (Count I) Should Be Dismissed Because Her Termination Was a Proper Exercise of Article II Authority

In her first count, Plaintiff alleges that her termination was *ultra vires*, as the FBI Director and Bureau "had no lawful authority to summarily terminate" her under Article II of the Constitution. Am. Compl. ¶ 31. Plaintiff is mistaken. Under Article II, the President has authority to remove Executive Branch employees, and the FBI Director, as a subordinate of the President, can exercise such authority on the President's behalf.

Article II vests the President with "[t]he executive Power" and directs him to ensure the law is faithfully executed. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020). The President necessarily relies on others for assistance in executing the laws. *See id.* at 204 ("[T]he Framers expected that the President would rely on subordinate officers for assistance."); *Trump v. Slaughter*, No. 25-332, 2026 WL 18556122, at *7 (U.S. June 29, 2026) ("To vest 'the whole executive power' in just one person was not to suggest that he could execute the laws alone and unaided." (citation omitted)); *Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 666-67 & n.51 (D.D.C. 2018), *aff'd,* 916 F.3d 1047 (D.C. Cir. 2019) (collecting cases). To ensure that those officers faithfully execute the laws, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513-14 (2010); *but see id.* at 506 (deferring whether such removal authority extends to "lesser functionaries subordinate to officers of the United States"). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514; *see also Slaughter*, 2026 WL 1855612, at *9 ("Text and structure thus both taught that the President had to be able to remove those who fail to live up to their duties, lest he fail to live up to his.").

While "all of" the "executive Power" is vested in the President, *Seila Law*, 591 U.S. at 203, the heads of departments—and inferior officers below them—may also properly exercise that power on the President's behalf. *See* U.S. Const., art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers). As those officials exercise executive power, their acts are attributable to the President. *See, e.g., Printz*, 521 U.S. at 922 (the President fulfills his duties

under the Take Care Clause both "personally and through officers whom he appoints"); *Wilbur v. United States ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) ("It is settled law that 'the [P]resident speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties' and that 'the acts of the heads of departments, within the scope of their powers, are in law the acts of the President.'" (quoting *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839); *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879)) (internal citations omitted)), *aff'd*, 283 U.S. 414 (1931).

In short, the President has authority under Article II to remove Executive Branch employees, and his subordinates can exercise that authority on the President's behalf. Applied to the facts of this case, Patel, as FBI Director, had authority under Article II to remove Plaintiff, as an Executive Branch employee. Accordingly, the Court should dismiss Plaintiff's *ultra vires* claim.

In passing, Plaintiff contends that, even if the FBI Director has removal authority under Article II, his "exercise of this power [fell] outside of the legal scope of or control by the CSRA and its limitations." Am. Compl. ¶ 32. Plaintiff does not expand on this alternative argument. To the extent Plaintiff intends this argument to state that the CSRA does not preclude her constitutional claims, such argument is addressed *supra* § I.

**B. Plaintiff Alleges Insufficient Facts to Support a First Amendment Retaliation Claim (Count III)**

In her third count, Plaintiff alleges her removal was in retaliation for her association with a "former senior FBI official," and thus violated her First Amendment freedom of association rights. Am. Compl. ¶¶ 37-44. Plaintiff, however, pleads only legal conclusions, not factual matter that would render those conclusions plausible, and, as such, this count warrants dismissal for failure to state a claim.

Claims of unlawful retaliation are analyzed under a four-part test—the *Pickering* test—"to determine if a public employee's termination violated his First Amendment rights." *LeFande v. District of Columbia*, 613 F.3d 1155, 1158 (D.C. Cir. 2010). Specifically:

> First, the public employee must have spoken as a citizen on a matter of public concern. Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern. Third, the employee must show that her speech was a substantial or motivating factor in prompting the retaliatory or punitive act. Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech.

*Id.* at 1158–59 (quoting *Wilburn v. Robinson,* 480 F.3d 1140, 1149 (D.C. Cir. 2007)); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "The first two factors under the *Pickering* test are questions of law for the court to resolve." *Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994); *see also Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983) ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement," and is a question of "law, not fact.").

Importantly, speech only involves matters of public concern "when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citation omitted). By contrast, speech is not on a matter of public concern when it "deals with individual personnel disputes and grievances" that are not relevant "to the public's evaluation of the performance of governmental agencies." *Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984); *see also O'Donnell v. Barry*, 148 F.3d 1126, 1133 (D.C. Cir. 1998) (quoting *Tao*, 27 F.3d at 638-39). "When public employees make statements pursuant to their official duties, the employees are not

speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S.410, 421 (2006).

Here, Plaintiff fails to allege facts indicating that her purported association with the unnamed "former senior FBI official" involved a matter of public concern. Plaintiff's bare allegations consist of a statement, on information and belief, that a former official was "viewed . . . as insufficiently aligned with the priorities or leadership of the current administration," and that Plaintiff was, in turn, "viewed by certain decision-makers as being associated" with that colleague and terminated as a result. Am. Compl. ¶ 38 & 17. Plaintiff offers no facts as to how her purported association with the official implicated protected speech—i.e., "relat[ed] to any matter of political, social, or other concern to the community," *Snyder*, 562 U.S. at 453, so as to involve a matter of public concern. Indeed, Plaintiff neither names the official with whom she asserts an alleged association, nor provides any facts regarding their alleged association—e.g., how such association differed from any other professional relationship with a colleague. And Plaintiff likewise offers no facts that would allow the Court to assess whether, for example, this association amounted to speech as a citizen rather than, as would be expected in a professional relationship, "pursuant to [her] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006). The First Amended Complaint's lack of detail, whether deliberate or not, prevents Plaintiff from pleading a viable First Amendment claim. *See, e.g.*, *Goode v. District of Columbia*, 531 F. Supp. 3d 366, 381 (D.D.C. 2021) (dismissing First Amendment retaliation claim brought by ALJ for failure to state a claim on ground that "the Amended Complaint contains only threadbare allegations").[2]

---

[2] Further on this point, Defendants note that Plaintiff's allegations in this count are inconsistent: Plaintiff, at times, refers to her association with "current and former senior FBI official<u>s</u> who were perceived as not aligned with the priorities of the current leadership" Am.

Moreover, to the extent this count is construed as asserting a claim of "patronage firing"—i.e., a termination made in retaliation for the partisan political affiliation of the employee—it still fails. In *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980), the Supreme Court ruled that "patronage firings" may violate an individual's First Amendment freedom of association rights where political affiliation is not an appropriate qualification for the subject position. *Elrod*, 427 U.S. at 367-68; *Branti*, 445 U.S. at 518. However, *Elrod-Branti* only extends to terminations on the basis of "partisan political affiliation." *Elrod*, 427 U.S. at 349; *Branti*, 445 U.S. at 511-12; *see also Hall v. Ford*, 856 F.2d 255, 261-62 (D.C. Cir. 1988) (stating that *Elrod-Branti* applies to employees "discharged for political belief"); Am. Compl. ¶ 40 (stating that the First Amendment protects government employees from termination "for not being supporters of the political party or leadership in power"). Here, in contrast, Plaintiff alleges that Defendants terminated her for "being associated with a former senior FBI official"—not because of her "partisan political affiliation." *Id.* ¶ 17. *Elrod-Branti*, thus, does not apply.

### C. Plaintiff Lacks a Protected Property Interest to Support a Procedural Due Process Claim (Count V)

In her fourth count, Plaintiff alleges that she was deprived of a protected property interest—her continued employment with the FBI and federal government—without adequate due process, in violation of her Fifth Amendment rights. However, under clearly established law, this allegation is without merit.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest . . . . Only after finding the deprivation of a protected interest do [courts] look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co.*

---

Compl. ¶ 38 as the basis for her termination, rather than a single "former senior FBI official who had retired following the 2025 presidential inauguration." *Id.* ¶ 17.

*v. Sullivan*, 526 U.S. 40, 59 (1999). "For a property interest to be constitutionally protected by procedural due process, a person must 'have a legitimate claim of entitlement to it.'" *Langeman v. Garland*, 88 F.4th 289, 295 (D.C. Cir. 2023) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "[E]xisting rules or understandings that stem from an independent source such as state law," *Bd. of Regents of State Colls.*, 408 U.S. at 577, can confer such an entitlement when they impose "substantive limitations on official discretion," *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) (citation omitted), including situations in which a government agency is required to take an action or confer benefits after certain prerequisites are met. *Tarpeh-Doe v. United States*, 904 F.2d 719, 723 (D.C. Cir. 1990). To create a legally cognizable property interest, the source must "contain 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the [source's] substantive predicates are present, a particular outcome must follow." *Id.* (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)); *see Doe v. Gates*, 981 F.2d 1316, 1321 (D.C. Cir. 1993) (holding that "general provisions in the [defendant] Agency handbook" are insufficient to create the requisite interest).

Here, Plaintiff alleges that "well-established internal practices and procedures" afford her protection from removal and, in so doing, establish a constitutionally protected property interest. Am. Compl. ¶ 25. Plaintiff cites four items in support of such contention: (1) FBI's "Offense Code and Penalty Guidelines Governing FBI's Internal Disciplinary Process (Jan. 1, 2017)" (hereinafter "FBI Offense Codes"); (2) an "[FBI Office of Professional Responsibility] Policy Guide, dated September 8, 2021" (hereinafter, "OPR Policy Guide"); (3) an "[FBI] Internal Affairs Policy Guide, dated July 11, 2024" (hereinafter "FBI Internal Affairs Policy Guide"); and (4) a 2021 DOI-OIG report on misconduct investigations. *See id.* ¶¶ 26-29. None of these items, as a matter of law, qualifies as a source of a legitimate claim of entitlement.

The FBI Offense Codes merely "explains" the purpose of FBI's disciplinary process, "reflects" which FBI offices handle disciplinary investigations, and provides "a table of FBI Offense Codes with corresponding penalty ranges." Am. Compl. ¶ 26; *see* Ex. A (FBI's Offense Code; showing the same). Plaintiff points to no mandatory language in the FBI Offense Code that specifically directs that "if the . . . substantive predicates are present, a particular outcome must follow." *Tarpeh-Doe*, 904 F.2d at 723. Nor can she. Indeed, the document expressly states that FBI retains discretion when determining a penalty, Ex. A at 3, lists "[d]ismissal" as an available sanction for "unprofessional conduct," *id.* at 17, and affords no specific process in advance of effectuating penalties. *See Strzok v. Garland*, Civ. A. No. 19-2367 (ABJ), 2025 WL 4662300, at *17 (D.D.C. Sept. 23, 2025) (noting that the FBI Offense Codes states that the FBI Director has "plenary authority" over disciplinary decisions, which can be discretionarily exercised); *see also* Am. Compl. ¶ 15 (stating that "unprofessional conduct" was the reason provided by the Director for Plaintiff's dismissal). Far from establishing a legitimate claim of entitlement, the Code grants "unfettered discretion," and, as such, "no constitutionally protected property interest exists." *Wash. Legal Clinic for the Homeless*, 107 F.3d at 36; *see also Langeman*, 88 F.4th at 293 (citing to the FBI Offenses Code, without finding that it establishes a constitutionally protected property interest); *see also Strzok*, 2025 WL 4662300, at *15 ("Moreover, the FBI policies in evidence show that termination was always a potential penalty for" the relevant violation); *Bloch v. Powell*, 348 F.3d 1060, 1067-68 (D.C. Cir. 2003) (if agency statements leave decisionmaker discretion, then "no protected property interest . . . can arise").

Likewise, the remaining items cited by Plaintiff do not establish a legitimate claim of entitlement. The OPR Policy Guide, *see* Ex. B, simply sets out the policy for FBI's investigation and adjudication of allegations of employee misconduct. Am. Compl. ¶ 27. The expressed

purpose of the guide is to "[a]dvise [FBI] employees of the role of the FBI's Office of Professional Responsibility in expeditiously and impartially adjudicating allegations of employee misconduct"; "[s]et forth the authorities and responsibilities of OPR and the Assistant Director (AD), OPR"; and "[o]utline the processes and procedures that apply to the adjudicative phase of the FBI's internal disciplinary process." Ex. B at 1. The guide does not establish substantive predicates that limit the Director's authority to dismiss employees. Moreover, Plaintiff nowhere alleges that she has made a report of employee misconduct or has been the subject of such a report, *see generally* Am. Compl., and thus the guide is inapplicable to her claims.

Plaintiff suggests that the OPR Policy Guide limits the Director's summary-dismissal authority by specifying that one of the instances in which the Director may exercise such authority is where "other compelling or exigent circumstances are at stake." Am. Compl. ¶ 27(f). But the D.C. Circuit has considered that very language in the context of the Director exercising his summary-dismissal authority and held that it "does not contain any 'specific derivatives' to the referenced decisionmakers that would indicate a 'particular outcome must follow' from predicate findings." *Langeman*, 88 F.4th at 295 (quoting *Tarpeh-Doe*, 904 F.2d at 723; citing *Ky. Dep't of Corr.*, 490 U.S. at 464).

The FBI Internal Affairs Policy Guide, *see* Ex. C, similarly affords no substantive predicates in advance of removal. Like the OPR Policy Guide, the FBI Internal Affairs Policy Guide "outline[s] Federal Bureau of Investigation (FBI) employee procedures for all allegations of employee misconduct or criminal activity, as well as the related investigations conducted by the FBI Inspection Division (INSD) Internal Affairs Section (IAS) or the Department of Justice." Ex. C at 1. By its terms, the "policy is limited to the IAS or DOJ role in processing referrals of alleged misconduct or criminal activity and investigations." *Id.* In short, it does not apply to

summary dismissals—indeed, it nowhere mentions either summary dismissals or, even, the FBI Director—and does not afford any procedural rights. *See id.*

Plaintiff notes that the guide "provides for 'fair, timely, and thorough' investigations and reviews of 'allegations of misconduct or criminality against FBI employees.'" Am. Compl. ¶ 28. Indeed, the guide states that in instances of the supervisor of an FBI employee, another FBI employee, an outside entity, or a private citizen submitting a written complaint to IAS alleging misconduct or criminality, IAS must process, review, and investigate such complaint—and IAS must do so in a fair, timely, and thorough manner. Ex. C at 5. But that policy is inapplicable here, where the Court is considering whether the Director (not IAS) has disregarded any substantive limitations on his discretion to remove (not process, review, and investigate a complaint of employee misconduct or criminality).

So, too, the 2021 DOI-OIG report on misconduct investigations. *See* Ex. D. The report, authored by a non-FBI component of DOJ, simply "review[s]" past FBI adjudications of employee misconduct investigations. *Id.* at i. As an investigatory report by a sister component, it does not, and cannot, impose any substantive limitations on the Director's summary-dismissal authority. Indeed, the report expressly notes the lack of such limitations: "[a] summary dismissal is immediate removal from FBI employment" that, for non-preference eligible employees, is "without the procedural protections that FBI OPR provides in non-summary dismissal cases." *Id.* Underscoring the unfettered discretion afforded for summary dismissals, the report remarks, "[DOJ-OIG] found that FBI policy does not define when summary dismissal is appropriate"; and, "[f]urther, because a summary dismissal cannot be challenged through the FBI's disciplinary appeals process, there is less oversight of its use than most other FBI disciplinary actions." *Id.* at i-ii.

In her amended complaint, Plaintiff newly alleges that FBI, through its Ethics and Integrity Policy Directive, has "fostered a mutually explicit understanding that an adverse employment action will not be summarily employed without due process." Am. Compl. ¶ 47. But Plaintiff points to no provision in the Directive that sets out such an understanding, nor could she—the Directive does not mention summary dismissal, let alone place any substantive limitations on the Director's summary-dismissal authority. *See generally* Ex. E (FBI Ethics and Integrity Program Policy Directive and Policy Guide). More generally, Plaintiff newly asserts that "FBI's own governing policies expressly prohibit summary dismissals." Am. Compl. ¶ 46. But elsewhere in the filing, as discussed above, she acknowledges that FBI's policies "provide[] for 'summary dismissal' of employees." *Id.* ¶ 27(f).

Finally, in passing, Plaintiff alleges that she has a constitutionally protected property interest in her continued employment that is "grounded in . . . statutory mandate," Am. Compl. ¶ 46, and references merit system principles that "prevent agencies from taking . . . personnel actions against members of the civil service for certain reasons." *Id.* ¶ 23 (citing 5 U.S.C. § 2302(b)(1), (3), (10)). Plaintiff, however, concedes that these principles, as provisions of the CSRA, do not apply to her, *id.* ¶ 24, and she cites no other "statutory mandate[s]" for her claim of a constitutionally protected property interest. *See generally id.*; *see also* 5 U.S.C. §§ 2302(a)(2)(A) & (C)(ii)(I) (generally excluding FBI employees from the CSRA).

Accordingly, because Plaintiff cannot identify any source establishing a constitutionally protected property interest in her continued employment with FBI, her due process claim fails.

**D. Plaintiff's Derivative Claims (Counts VI and VII) Should Be Dismissed**

Plaintiff also purports to bring a claim under the Declaratory Judgment Act. Am. Compl. ¶¶ 54-56 (Count VI). But the Declaratory Judgment Act provides no separate cause of action nor independent source of federal jurisdiction. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)

(the Act does not "provide a cause of action" as the "the availability of declaratory relief presupposes the existence of a judicially remediable right" (cleaned up)). Instead, it is "procedural only" and simply "enlarge[s] the range of remedies available in the federal courts." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (internal quotation marks omitted). Accordingly, because Plaintiff's substantive claims fail for the reasons described above, Plaintiff is not entitled to a declaratory judgment. *See, e.g.*, *Westinghouse Elec. Co. v. Korea Elec. Power Corp.*, Civ. A. No. 22-3228 (APM), 2023 WL 7007613, at *2 (D.D.C. Sept. 18, 2023) ("A plaintiff must identify a cause of action permitted by federal law" to obtain declaratory relief.).

Plaintiff's mandamus claim similarly fails. The Mandamus Act confers jurisdiction on the district courts over actions "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is proper only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Fornaro*, 416 F.3d at 69. Mandamus "is available only in 'extraordinary situations'; it is hardly ever granted; [and] those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005). Where a plaintiff fails, as a matter of law, to show that the elements for mandamus relief are met, the court must dismiss the mandamus claim. *Id.*

Plaintiff asserts that "Defendants have a legal duty not to terminate [her] without affording [her] the protections prescribed by law." Am. Compl. ¶ 58. However, as discussed above, Plaintiff points to no independent source for a legitimate claim of entitlement—i.e., there are no "protections prescribed by law" with which Defendants have failed to comply. Rather, the sources cited by Plaintiff underscore the plenary authority and discretion afforded to the Director

in making disciplinary decisions, including summary dismissals. *See* Ex. A at 2. Plaintiff has not shown that she is entitled to "any relief," let alone a clear and indisputable right to relief; accordingly, "mandamus is not available." *Langeman v. Garland*, Civ. A. No. 21-2888 (RJL), 2022 WL 5240112, at *4 n.6 (D.D.C. Aug. 23, 2022) (citation omitted), *aff'd*, 88 F.4th 289 (D.C. Cir. 2023); *see also Lamb*, 82 F. Supp. 3d at 424 n.5 (dismissing mandamus claim challenging summary dismissal).

Finally, in Count II, Plaintiff alleges that her termination was "ultra vires." Am. Compl. ¶ 35. Plaintiff styles Count II as alleging a violation of the APA, *see id.* ¶¶ 34-36, and appears to use this phrase in lieu of the APA's "otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). Nevertheless, to the extent Plaintiff intends to bring a standalone statutory ultra vires claim, such claim fails as a matter of law. The reviewing standard for a statutory ultra vires claim is necessarily narrow: ultra vires review applies only where an agency has contravened a clear statutory command—where Congress has said "shall not," and the agency has done precisely what the statute forbids. *Leedom v. Kyne*, 358 U.S. 184 (1958). As discussed above, Plaintiff does not identify any text, statutory or otherwise, providing that Defendants "shall not" take the challenged action. Accordingly, any statutory ultra vires claim necessarily fails.

* * *

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's amended complaint.

Dated: July 1, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ William Thanhauser*
WILLIAM THANHAUSER, D.C. Bar #1737034
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7706

*Attorneys for the United States of America*